UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT   FILED

Dec 12  3 50 PM '03

| | | |
|---|---|---|
| RICARDO INHAN | : | |
| | : | CIVIL ACTION NO. |
| PLAINTIFF, | : | 3:02 CV 0213 (GLG) |
| v. | : | |
| | : | |
| NORTHEAST MARKETING | : | |
| GROUP LLC | : | December 10, 2003 |
| | : | |
| DEFENDANT. | : | |

## THIRD AMENDED COMPLAINT

1. This action is brought pursuant to and jurisdiction of this Court is founded upon 28 U.S.C. § 1331 (federal question) and 28 U.S.C. §1343.

2. The Plaintiff specifically alleges violations of the Civil Rights Act, as codified in Title VII, 42 U.S.C. § 2000e *et seq.*, as amended, based upon the Plaintiff's nationality, race and ethnicity; the creation of a hostile work environment in violation of 42 U.S.C. § 2000e-a; retaliation in violation of Title VII, 42 U. S .C. § 1203 and various state law claims.

3. Venue is proper in the District of Connecticut pursuant to 28 § U.S.C. § 1331(b) in that the Plaintiff's claims arose in this District and both the Plaintiff and the Defendant reside in this District.

4. Supplemental jurisdiction over the Plaintiff's state law claims is invoked pursuant to 28 U.S.C. § 1367 in that the state law claims arose out of the same transaction and occurrences as the Plaintiff's federal claims.

5. Costs, expert witness fees and attorney fees are sought pursuant to 42 U.S.C. § 1988.

6. The Plaintiff timely requested and received a release of jurisdiction from the CHRO on or about November 13, 2001 and a right to sue from the EEOC on or about November 6, 2001.

## PARTIES

7. The Plaintiff, Ricardo Inhan, is a native of Brazil.

8. The Plaintiff resided at all times herein mentioned at 97 Memory Lane, Bridgeport, Connecticut.

9. The Plaintiff is currently a resident of the State of Florida.

10. The Defendant, Northeast Marketing Group LLC, is a limited liability company duly organized and existing under the laws of the State of Connecticut, maintaining and operating its principal place of business at 8 Fairfield Boulevard, Wallingford, Connecticut.

## FACTS

11. Byron Brewer, Jr. ("Brewer, Jr."), the President and Treasurer of the Defendant hired the Plaintiff.

12. The Plaintiff commenced employment for the Defendant on or about June 19, 1999.

13. The Plaintiff reported to Brewer, Jr. and Byron Brewer Sr. ("Brewer, Sr."), the Chairman and Secretary of Defendant Northeast Marketing Group LLC.

14. The Plaintiff accepted employment on the condition that the Plaintiff's work arrival and start time was flexible since he lived an hour away from the

Defendant's workplace and was also required to transport his young son to school each morning.

15. The Plaintiff was hired as a computer programmer to develop an internal system via the internet that would provide tracking, filing, financial, and marketing information to customers (hereinafter "Project").

16. At the time of hire and during all relevant times thereafter the Plaintiff was the sole computer programmer at the Defendant.

17. At the time of hire, the Defendant agreed that the existing system in place was inadequate and unsuitable for the needs of the Defendant.

18. The web page at the time of the Plaintiff's hire was substantially inoperable and obsolete, containing broken links and poor visuals and was inordinately slow loading.

19. The Plaintiff made clear prior to his hire that the current internet service provider ("ISP") was unable to support the functions required for the user demand and other purposes of the fast paced platform he was asked to develop and implement.

20. Approximately two months after hire the Plaintiff was engaged in a conversation with an African American coworker, concerning his experience of farm life prior to becoming an American citizen.

21. The Plaintiff contrasted his life prior to becoming an American citizen and how he was paid sixteen (16) cents for a basket of picked corn.

22. Despite the Plaintiff's repeated requests for the new ISP and necessary software, the Defendants failed to comply with said requests.

23. Finally, on or about August of 2000, after criticizing the Plaintiff's performance on the Project, which was through no fault of the Plaintiff's, the Defendant contracted for a new ISP provider.

24. The quality and quantity of the Defendant's web platform immediately improved with the new ISP provider.

25. Upon information and belief, there was no previous employee handbook.

26. A memorandum was enclosed with the handbook, signed by Brewer, Jr.

27. The memorandum stated that "it is our desire to provide you with a work environment that is fair, just and equitable."

28. The employee handbook included the company policy on discrimination and harassment.

29. The employee handbook expressly stated that "our company will not discriminate against employees or applicants for employment on any legally-recognized basis including, but not limited to, veteran status, race, color, religion, sex, marital status, national origin, physical or mental disability and/or age."

30. The employee handbook also stated that "it is our policy to prohibit harassment of one employee by another employee or supervisor on any basis including, but not limited to, veteran status, race, color, religion, marital status, national origin, physical or mental disability and/or age."

31. On December 15, 2000, the Defendant illegally withheld $408.00 from the Plaintiff's salary.

32. To date, the Plaintiff has not received payment for the $408.00 either.

33. On December 22, 2000, this law firm sent a letter to the Defendant stating that the Plaintiff had retained a lawyer.

34. Thereafter, the Plaintiff was threatened with increased hostility, intimidation and abuse, while creating impediments to his performance and assessing unsubstantiated, erroneous and false disciplinary warnings.

35. As a result of the foregoing treatment the Plaintiff filed a complaint with the Connecticut Commission On Human Rights & Opportunities on January 23, 2001.

36. Thereafter, the retaliation, hostility, disparaging remarks and unfounded performance and attendance issues and disciplinary warnings continued.

37. Despite repeated requests, the Defendant further failed to provide the Plaintiff with essential reports and paperwork required so that the Plaintiff could do his job.

38. The Plaintiff repeatedly requested the reports and offered to pick them up so as to enter them into the computer.

39. Brewer, Jr. also failed and neglected to respond to e-mail and other forms of messages directed to him by the Plaintiff that the performance of the web site was being degraded and its performance negatively affected by the failure to timely post the information contained in said reports.

40. For all of the foregoing reasons, on or about March 16, 2001 the Plaintiff was constructively discharged from the Defendant.

**COUNT ONE**      **Violation of Title VII of the Civil Rights Act of 1964**
                   **Discrimination based on Race and National Origin**

1-40. The Plaintiff hereby incorporates by reference Paragraphs 1 through 85 as if more fully set forth herein.

41. The Defendant discriminated against the Plaintiff on the basis of his Hispanic race and Brazilian nationality when it treated the Plaintiff in a disparate manner from its Caucasian, American employees in the following manner:

   a. The Plaintiff was forced to endure disparaging remarks and derogatory comments about his native country Brazil and fellow citizens;

   b. The Plaintiff was denied access to participation in any employee benefit plans that were given to Caucasian, American employees;

   c. The Defendant failed to give raises commensurate with job performance as was done with other non-Hispanic employees;

   d. The Plaintiff was ordered to physically move the company's belongings to another location, although it was not a function of his job and not ordered of other non-Hispanic employees;

   e. The Plaintiff's salary was withheld a multitude of times;

   f. The Plaintiff was criticized for taking vacation and other time off;

   g. The Defendant continuously threatened to decrease the Plaintiff's pay;

   h. The Plaintiff was denied breaks, including lunch breaks;

   i. The Plaintiff was told whom he could not associate with;

   j. The Plaintiff was not paid bonus';

   k. The Defendant complained and wrote memos about the Plaintiff's flexible schedule, which had been agreed upon at the time of hire;

6

l. The Plaintiff was not given paid days off that was given to other employees;

m. The Plaintiff was not paid for time off despite being a salaried employee;

n. The Plaintiff was continuously treated disparately from his fellow Caucasian, American co-workers by the Defendant; and

o. The Plaintiff was not provided with the essential tools required so that he could adequately perform his job duties.

42. The Plaintiff complained to the Defendant about the aforementioned conduct to no avail.

43. As a result of the foregoing conduct, the Plaintiff suffered and will continue to suffer emotional and psychological stress, distress and anxiety.

44. As a result of the foregoing conduct, the Plaintiff incurred substantial lost wages, fringe benefits, health insurance, life insurance, retirement and pension.

45. As a result of the foregoing conduct, the Plaintiff suffered from the loss of the ability to enjoy life's pleasures and activities.

**COUNT TWO**     **Violation of Title VII of the Civil Rights Act of 1964**
                  **Retaliation**

1-40. Plaintiff hereby incorporates Paragraphs 1 through 40 as if fully set forth herein.

41. The Defendant retaliated against the Plaintiff after he filed a complaint with the State of Connecticut Department of Labor on or about August 27, 2000 for the illegal withholding of the Plaintiff's wages on August 16, 2000.

42. The Defendant told the Plaintiff that his pay would be cut if he continued to complain to the Department of Labor.

43. Brewer, Jr. threatened the Plaintiff's job when he told the Plaintiff that he could be fired for insubordination for filing a claim with the Department of Labor.

44. Brewer, Jr. also told the Plaintiff that he only had a right to back wages if he worked for free.

45. Thereafter the Defendant began interfering with the Plaintiff's ability to perform and fulfill his job requirements.

46. In retaliation for the Plaintiff's filed claim, the Defendant prohibited the Plaintiff from associating with the only other minority co-worker at the Defendant Company.

47. The Defendant further discriminatorily singled out the Plaintiff and treated him in a disparate manner.

48. The Defendant thereafter illegally withheld larger amounts from the Plaintiff's paycheck.

49. On December 22, 2000 the counsel for Plaintiff sent a letter stating that counsel had been retained and threatened that a complaint with the Commission on Human Rights and Opportunities and by Connecticut being a deferral state, a complaint with the Equal Employment Opportunity Commission would be filed if the discriminatory conduct did not cease and desist.

50. The Plaintiff was sent home from work that day and told to "think about what you've done" and excluded from the Defendant's holiday party on that day.

51. The Defendant also denied the Plaintiff a yearly bonus, while paying one to all of the other employees.

52. Thereafter, the Plaintiff was threatened with increased hostility, intimidation and abuse, while creating impediments to his performance and assessing unsubstantiated, erroneous and false disciplinary warnings.

53. As a result of the foregoing treatment the Plaintiff filed a complaint with the Connecticut Commission On Human Rights & Opportunities on January 23, 2001.

54. After the Plaintiff filed a complaint with the CHRO, the Defendant responded with retaliatory behavior including hostility, disparaging remarks and unfounded performance and attendance issues and disciplinary warnings.

55. The Defendant retaliated against the Plaintiff when it failed to provide the Plaintiff with essential reports and paperwork required so that the Plaintiff could do his job, yet subjected him to disciplinary warnings for an alleged failure to do his job.

56. The Plaintiff's computer was also sabotaged by the deletion of files from his computer.

57. The Defendant further retaliated against the Plaintiff when paid all of its other employees for two snow days, yet withheld those two days from the Plaintiff's paycheck in March of 2001.

58. The retaliatory behavior continued until on or about March 16, 2001, when the Plaintiff was constructively discharged from the Defendant.

59. As a result of the foregoing conduct, the Plaintiff suffered and will continue to suffer emotional and psychological stress, distress and anxiety.

60. As a result of the foregoing conduct, the Plaintiff incurred substantial lost wages, fringe benefits, health insurance, life insurance, retirement and pension.

46. As a result of the foregoing conduct, the Plaintiff suffered from the loss of the ability to enjoy life's pleasures and activities.

**COUNT THREE    Breach of Implied Contract**

1-40.   Plaintiff hereby incorporates Paragraphs 1 through 40 as if fully set forth herein.

41.   The Plaintiff commenced employment for the Defendant on or about June 19, 1999.

42.   The Defendant agreed upon hiring the Plaintiff to the following terms and conditions, which constituted an implied contract:

   a.   the Plaintiff's work start time would be flexible;

   b.   the Plaintiff would be provided the best climate to achieve his goals; and

   c.   the Plaintiff would be given the tools in which to succeed at his job, including: an upgraded ISP, ASP extensions, necessary software, a working printer, and data for timely entry.

43.   The Defendant by its words, conduct and actions endorsed policies and procedures, whereby the following implied contract existed:

   a.   An employee would be paid overtime in accordance with the law;

   b.   a work environment shall be provided that is "fair, just and equitable;"

   c.   the Defendant shall not discriminate against workers on the basis of race or national origin;

   d.   the Defendant shall not harass workers on the basis of race or national origin;

   e.   employees would be treated equally and fairly in areas of compensation, vacation and other time off and in performance evaluations and disciplinary measures;

   f.   employees would be provided with health insurance;

g. employees would be paid promptly and properly;

h. the Plaintiff would have a flexible schedule;

i. pay raises when promised would ultimately be received within the timeline set forth by the Defendant;

j. employees would be paid for work performed;

k. vacation, sick time and personal time would be distributed equally and fairly to employees;

l. employees shall have equal employment opportunity unaffected by race or national origin;

m. warnings shall be given prior to disciplinary action;

n. the Plaintiff would be provided the best climate and the tools necessary to perform his job and achieve his goals;

o. the Plaintiff would not be subject to sabotage in the work environment;

p. the Defendant would upgrade its ISP;

q. the Defendant would provide the necessary ASP extensions;

r. the Defendant would provide the required software;

s. the Defendant would provide a working printer;

t. the Defendant would provide necessary data for timely entry; and

u. workers would not be singled out for disparate treatment by the Defendant.

44. The Defendant breached the foregoing implied contract.

45. As a result of the foregoing conduct, the Plaintiff suffered and will continue to suffer emotional and psychological stress, distress and anxiety.

46. As a result of the foregoing conduct, the Plaintiff incurred substantial lost wages, fringe benefits, health insurance, life insurance, retirement and pension.

47. As a result of the foregoing conduct, the Plaintiff suffered from the loss of the ability to enjoy life's pleasures and activities.

**COUNT FOUR**  **Title VII of the Civil Rights Act of 1964**
**Hostile Work Environment.**

1-40. Plaintiff hereby incorporates Paragraphs 1 through 40 as if fully set forth herein.

41. The Defendant subjected the Plaintiff to and created a hostile work environment, adversely affecting the conditions of the Plaintiff's employment in the following manner:

   a. The Plaintiff, a Hispanic of Brazilian descent was singled out for criticism, insult, intimidation and abuse, including disparaging statements made by Brewer, Jr., Brewer, Sr. and Lee Ann Lionetti;

   b. The Plaintiff did not receive overtime for work performed while he was an hourly employee;

   c. While the Plaintiff was a salaried employee, the Defendant illegally withheld a portion of the Plaintiff's salary on numerous occasions;

   d. Although the Defendant provided access to financial planning to its employees, the Defendant denied the Plaintiff access;

   e. Although the Defendant provided its employees with health and life insurance, the Plaintiff was discriminatorily excluded;

   f. In a continuing pattern of discriminating against the Plaintiff, the Plaintiff was denied raises and bonuses that were given to other employees;

g. The Plaintiff was the only employee who was ordered to perform heavy labor and lifting in connection with the company's physical move to another location, although it was not a function of his job and the Defendant did not order the other non-Hispanic employees to do so;

h. The Defendant threatened to fire the Plaintiff after the Plaintiff filed a complaint for the first illegal withholding of his salary;

i. The Defendant interfered with the Plaintiff's ability to do his job by failing to provide an upgraded ISP, ASP extensions, necessary software, a working printer and data for timely entry;

j. While the Defendant interfered with the Plaintiff's ability to do his job, the Defendant then continuously criticized the Plaintiff's performance;

k. The Defendant continuously criticized and complained about the Plaintiff's flexible schedule, which had been agreed upon at the time of hire;

l. The Plaintiff was prohibited from receiving phone calls, although other employees were permitted to accept any phone calls, personal or otherwise;

m. In a discriminatory fashion, the Defendant excluded the Plaintiff from the holiday party and sent him home after he retained counsel in an attempt to stop the discriminatory conduct;

n. The Plaintiff was denied paid days off that were given to other employees;

o. The Defendant subjected the Plaintiff to false disciplinary warnings; and

p. The Plaintiff was prohibited from associating with or taking breaks with his co-worker, Percy Curry, the only other minority at the Defendant Company.

42. The Defendant's conduct was severe and pervasive and in effect, created a hostile work environment.

43. As a result of the foregoing conduct, the Plaintiff suffered and will continue to suffer emotional and psychological stress, distress and anxiety.

44. As a result of the foregoing conduct, the Plaintiff incurred substantial lost wages, fringe benefits, health insurance, life insurance, retirement and pension.

45. As a result of the foregoing conduct, the Plaintiff suffered from the loss of the ability to enjoy life's pleasures and activities.

**COUNT FIVE**      **Defamation**

1-40. The Plaintiff hereby incorporates by reference Paragraphs 1 through 40 as if fully set forth herein.

41. The Plaintiff was defamed when Lee Ann Lionetti called the Plaintiff a "thief and a liar," stating "You are stealing from the company, we'll have to talk to the lawyer about this."

42. As result of the foregoing conduct the Plaintiff has been hindered, obstructed and unable to obtain alternative employment in his profession.

43. As a result of the foregoing conduct, the Plaintiff suffered and will continue to suffer emotional and psychological stress, distress and anxiety.

44. As a result of the foregoing conduct, the Plaintiff incurred substantial lost wages, fringe benefits, health insurance, life insurance, retirement and pension benefits.

45. As a result of the foregoing conduct, the Plaintiff suffered from the loss of the ability to enjoy life's pleasures and activities.

## **PRAYER FOR RELIEF**

Wherefore the Plaintiff claims:

1. Money damages;

2. Costs;

3. Punitive damages, attorney fees and expert witness fees;

4. Prejudgment interest;

5. That this Court retain jurisdiction over this matter;

6. Trial by jury.

7. Such other relief that the court deems just, fair and equitable;

 

                                          The Plaintiff,
                                          Ricardo Inhan

By:_____
Eugene N. Axelrod, Esq. (CT00309)
The Employment Law Group LLC
8 Lunar Drive
Woodbridge, CT 06525
Tel: 203.389.6526
Fax: 203.389.2656

## **CERTIFICATION**

Pursuant to Fed. R. Civ. P Rule 5 (b), I hereby certify that a copy of the foregoing was mailed on this date to the following:

Louis M. Federici, Esq.
Angela M. Offredi, Esq.
Parrett, Porto, Parese, & Colwell, P.C.
2319 Whitney Avenue, Suite 1D
Hamden, CT 06518

12/10/03
Date

Melissa Toddy
Commissioner of the Superior Court